## Raybold *versus* Raybold.

1. The fact that real estate was paid for with the wife's earnings or savings does not give to her a trust estate in the property: money thus acquired is not the property of the wife within the meaning of the Act of 11th April, 1848, relating to the estate of married women, but is the property of the husband.

2. A trust in real estate in a grantee may be proved by an endorsement made by him on an envelope enclosing the deed; also by an unexecuted deed for the premises prepared by the direction of the grantee; and also by his parol declarations.

3. A trustee of real estate for the use of a man, his wife, and children, has no equitable lien on the trust estate as against the wife, for liabilities of the *husband* assumed by the trustee without her implied or express assent.

4. A trustee is generally entitled to *costs* in cases of dispute relative to the trust estate; but where he litigates for his own private interest, he is not entitled to costs.

APPEAL from the decree of the Court of Common Pleas, *Philadelphia*.

The issue in this case arose on bill and answer. The complaint of Joshua M. Raybold and Mary his wife, against Mary E. Raybold, widow of Frederick A. Raybold, Esq., was exhibited in the Common Pleas, Philadelphia.

It appeared that, by deed, dated 1st January, 1845, Joseph Wimer and wife conveyed to Frederick A. Raybold certain real estate, viz., certain property on Catharine street, Moyamensing, and also, a lot in Moyamensing. The property was conveyed subject to a mortgage.

It was alleged in the bill, that the property was purchased by F. A. Raybold, with the separate money of the wife of J. M. Raybold, and in trust for her separate use. That the said Mary, a few days before the date of the deed, furnished F. A. Raybold with the consideration-money, viz., $525, with which he was to purchase the property, *in trust for her*. The deed was made to F. A. Raybold without a trust being declared. That, in 1845, in compliance with her request, a deed was prepared, under the direction of F. A. Raybold, whereby the estate was to be conveyed to a trustee, for the use of the complainants and their children, the rents to be paid to her; or, at her option, she to occupy the property; and, after her death, in trust for her husband during life, and then in trust for their children. It was alleged that the trust was approved of by the wife, but that the deed was not executed.

F. A. Raybold died on 2d May, 1851, having made a will, of which the defendant was executrix, and, after certain bequests, residuary devisee.

It was further alleged that, after the death of F. A. Raybold, was found amongst his papers, the deed to him from Wimer and

[Raybold v. Raybold.]

wife, folded up in paper, on which was endorsed in his handwriting as follows:—

" Deeds, &c.

"Property in Moyamensing, held by me in trust for Joshua M. Raybold, wife, and children." Signed by him.

Also, " To be conveyed by me to Joshua M. Raybold, at any time he may desire it." Signed by him, and dated July 18, 1848.

That from the time of the purchase, Mary Raybold occupied the premises, without interference of her husband. It was further alleged, that the conveyance by the defendant was refused, on the ground that F. A. Raybold became surety in a bond for J. M. Raybold, the husband, for $600, and that the deed could be held for the indemnity of the respondent.

In the answer, it was denied that the real estate in question was purchased for the separate use of the wife, or that it was paid for with her separate money. It was alleged, that the deed to F. A. Raybold was made as it was at the request of J. M. Raybold; that the property was held in trust for him, and wife, and children, and that the delay in executing the deed was owing to the draft of the deed not being returned to the decedent, and afterwards, by other relations arising between the decedent and J. M. Raybold. That, in the year 1849, the decedent became security for J. M. Raybold, one of the complainants, at his instance, for $600, and that this was done on the security of the property of which he had the legal title; and, also, that the decedent became further liable as security for J. M. Raybold, for $150. That, further, the same person was indebted to the estate of the decedent above $400. That he received, under the will of the decedent, certain stock, which has been transferred.

It was submitted, whether the defendant was not entitled to indemnity for the $600, before a conveyance was decreed.

Testimony was given that Mary Raybold, one of the complainants, had saved money, given to her by her husband, from time to time, for herself and for housekeeping purposes, and from money received from boarders; and that this money was used in paying for the property purchased from Wimer.

Evidence was given of declarations made by the decedent, that the property purchased from Wimer belonged to the wife of J. M. Raybold. That he spoke of the property as belonging to J. M. Raybold's wife, and, on some occasions, he may have spoken of it as being the property of J. M. Raybold.

It was ordered by the Court, that the executrix of the decedent acknowledge and deliver a deed conveying to a person named the real estate in question, upon the trust, that he will lease the same, and pay the rents to Mary Raybold, or suffer her to occupy the

premises, or lease the same, and receive or take the rents during her life, *for her own separate use,* so as the same shall not be liable to the debts, or be in the power of her husband; after her death, the property to be held for the use of her husband, if surviving; and, after the decease of the survivor of the two, then the property to be held in trust for the use of their children; and, if there be no children, then in trust for the use of the right heirs of J. M. Raybold. It was further ordered, that the deed contain a power of revocation in favor of Mary Raybold in usual form.

It was also decreed, that the plaintiff recover *costs.*

Error was assigned, 1st, To the decree that the respondent execute a conveyance. 2d, To the decree that she pay costs. 3d, In decreeing that the respondent convey before the claims of the decedent had been discharged, and indemnity given for liabilities.

*Austin,* for appellant.—Where an estate is held for the separate use of the wife, the trustee cannot encumber it for her husband's debts. But it was contended, that there was no trust for her *exclusive use* contemplated; and that the money used in the purchase was not *the separate property of the wife.*

As to the *third* exception, it was contended that the trustee ought to be paid for advances by him to the *cestui que trust:* 2 *Peere Williams,* 455, Bulsh *v.* Hyhan; 1 *Bin.* 126; 5 *Rawle* 91.

That the respondent was willing to do what was proper; that judicial direction was advisable, and that she should not be compelled to pay costs.

*Webster,* for appellee.—The case of Dyer *v.* Dyer, 2 *Cox* 92, was referred to as a leading case on the subject of resulting trusts. Such a trust may be established upon the parol declarations or acknowledgments of the person in whose name the conveyance is taken: 1 *White & Tudor,* 176; 1 *Wend.* 626–653; Wetherill *v.* Hamilton, 2 *Watts* 325; 3 *Harris* 195; 4 *W. & Ser.* 149; 3 *Bin.* 302; 2 *Ser. & R.* 521; 8 *Id.* 492; 5 *Watts* 27; *Id.* 493; 4 *Barr* 359; 2 *Story's Eq.* 444.

When the declaration of trust is made, although by parol, at the time of the execution of the deed, and the title becomes vested on those terms, it cannot be altered without the consent of the parties: 2 *Select Eq. Cases* 81; 3 *Ves.* 341.

It was contended that, in this case, the money used in effecting the purchase belonged *to the wife.*

The opinion of the Court was delivered, March 21, by

WOODWARD, J.—The decree in this case cannot be sustained

on the ground that a trust resulted to the wife of Joshua M. Raybold, from her ownership of the funds wherewith the estate was purchased. Granting that she furnished the money to pay for the property, the evidence proves that it came from her earnings and savings during coverture. Meritorious as her industry and frugality were, they enured to the benefit of her husband; and, from a purchase of real estate made with means thus acquired, if any trust results by operation of law, it results to the husband and not to the wife. True, that by the Act of Assembly of 11th April, 1848, all property, of whatever name or description, which "shall accrue to any married woman, by will, descent, deed of conveyance, or *otherwise*, shall be owned, used, and enjoyed by such married woman as her own separate property." But savings out of the family purse, furnished and replenished by the husband, are not property that *accrues* to the wife within the meaning of the Act. The Legislature have done much to change the legal incidents of the marriage relation, but they have not extinguished quite all of the marital rights of the husband. He is still entitled to the person and labor of the wife, and the benefits of her industry and economy. Nor is she degraded to the condition of a hireling, which she would be if servants' wages could become her separate property. These moneys, therefore, being in the eye of the law the property of the husband, imply no trust for the exclusive benefit of the wife.

But there are other grounds in the case, on which the implication of a trust in favor of the wife and children is irresistible. The endorsements on the envelope, enclosing the deed of Wimer, admitted to be in the handwriting of Frederick A. Raybold, amount almost to a declaration of such a trust, whilst the parchment deed, prepared for execution in Mr. Raybold's office and under his eye, is an admission of the trust alleged in the bill, as distinct as he could make, short of an actual execution of that or some equivalent instrument. To the same effect were his declarations to Mr. Norton, Mr. Ward, and other witnesses who were before the examiner. Here is abundant ground for a decree in favor of Joshua M. Raybold, his wife and children. And the respondent has no equity, as against these parties, to claim indemnity for the liabilities assumed by her husband for the benefit of Joshua M. Raybold.

If the trust were essentially for the benefit of Joshua M. Raybold, and he was alone asking for its specific execution, a chancellor might require him to indemnify his trustee on the general principle that he who asks equity shall do equity; but the wife is the party first and principally in interest, and she is under no equity to provide for her husband's debts. She is not shown to have ever said a word or done an act to give her trustee an equitable lien for the liabilities he chose to assume for her husband, and there

[Raybold *v.* Raybold.]

is no principle better settled than that a trustee is not permitted to obtain any profit or advantage to himself in managing the concerns of the *cestui que trust.* "In short," says Justice STORY, "it may be laid down as a general rule, that a trustee is bound not to do anything which can place him in a position inconsistent with the interests of the trust, or which have a tendency to interfere with his duty in discharging it:" 1 *Equity Jurisprudence,* § 322. Mr. Raybold may have assumed these liabilities on the faith of the legal title which he held, though of that there is no evidence; but he could not encumber it without the assent, implied or express, of the *cestui que trust,* and of such assent there is no pretence of evidence.

We are of opinion, on the whole, that there was no error in the decree of the Common Pleas.

But it is said they erred in allowing costs to the complainant. The general rule undoubtedly is, that trustees are allowed costs out of the estate; but where a trustee has a private interest of his own, separate and independent from the trust, and obliges the *cestui que trust* to come into Court, merely to hear the point relating to his own private interest determined at the expense of the trust, this is such vexatious behavior on the part of the trustee that he will be directed to pay the costs : 3 *Daniel's Ch. Prac.* pl. 1557.

Judgment affirmed.